OPINION
Defendant-appellant Jevon C. Russell appeals from his conviction and sentence for Attempted Complicity to Commit Possession of Cocaine, following a limited remand of this matter for re-sentencing purposes. Plaintiff-appellee the State of Ohio cross-appeals. Russell raises several arguments, including that the trial court erred by permitting the State to amend the first two counts of the indictment from charges of Possession of Cocaine and Marijuana to Attempted Possession of Cocaine and Marijuana, since the amendments changed the names and identities of the charged offenses in violation of Crim. R. 7(D). The State argues that the trial court exceeded the scope of this court's remand by vacating Russell's conviction for Complicity to Commit Possession of Cocaine, a felony of the second degree, and replacing it with a conviction for Complicity to Commit Attempted Possession of Cocaine, a felony of the third degree, on sufficiency of the evidence grounds. The State contends that this matter was remanded for the limited purpose of determining "which of the six counts [for which Russell was originally convicted and sentenced] are to be merged with which of the others."
We conclude that the trial court did not err by permitting the State to amend the indictment to conform to the evidence presented, because Crim.R. 31(C) permits a defendant to be found not guilty of the offense charged but guilty of an attempt to commit it; therefore, the trial court was allowed to permit amendment of the indictment to charge Russell with an attempt to commit the specific offense with which he was originally indicted, without violating Crim.R. 7(D). We also conclude, however, that the trial court did exceed the scope of its authority on remand by not confining itself to determining which of the six counts were to be merged with which of the others, and, instead, considering whether there was sufficient evidence to support Russell's conviction for Complicity to Commit Possession of Cocaine. Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for proceedings consistent with this opinion.
 I
On August 17, 1997, Russell telephoned his friend, Wytina Bush, asking permission to have a package from his sister delivered to Bush's apartment. Two days later, Russell met with Bush at her apartment located at 5079 North Norris Drive in Dayton Ohio. Russell told Bush that the package was due to arrive by Federal Express on August 20, 1997, between the hours of 1:00 p.m. and 2:00 p.m. Russell instructed Bush to sign for the package under the name, "Tina Smith," and then page him by placing all "fives" in the pager so that he would know when to retrieve the package. Russell offered to pay Bush $100 to do as he had asked. Bush agreed to follow Russell's instructions, without questioning him about the contents of the package.
On August 20, 1997, at approximately 8:00 a.m., Russell arrived at Bush's apartment accompanied by Orlando Fowler, whom Russell introduced to Bush as "Joe Joe." Russell left for a couple of hours, returned briefly for about 15 minutes, and then left once more. Fowler remained at Bush's apartment.
On that same day, Dayton Police Officer Roger Rockwell and his drug canine Rusty were working on the drug interdiction detail at the Dayton International Airport. Rockwell's duty was to monitor incoming packages as they were being sorted by air freight companies like Federal Express, and to intercept any packages suspected of containing contraband. Rockwell became suspicious of a Federal Express package arriving from California that was addressed to a "Tina Smith," at 5079 North Norris Drive, Dayton, Ohio. When Rockwell presented the package to Rusty, the dog reacted by biting and scratching it, a response that tended to confirm Rockwell's suspicions that the package contained illegal narcotics. After obtaining a search warrant, the police opened the package and discovered a block of marijuana (1,949 grams) and two baggies of powder cocaine (450 grams) stuffed inside the battery compartment of a toy bear. Rockwell and Detective Kevin Bollinger obtained an additional warrant to place a transmitter inside the package and to make a controlled delivery of it to 5079 North Norris Drive, Dayton, Ohio.
Later that same day, Bollinger, dressed in a generic delivery service uniform, arrived at Bush's apartment. Fourteen members of the Dayton Police Department were strategically placed around Bush's residence, watching it from all directions. When Bollinger knocked on the door of the residence announcing that he was from Federal Express, Bush opened the door, identifying herself as "Miss Smith." Bush accepted the package, and signed for it, using the name, "Tina Smith." Bollinger noticed Fowler along with several small children inside the apartment.
Bush brought the package inside and set it on the table. Not having a telephone, Bush went next door to use her neighbor's telephone to page Russell. On her way out of the door, Fowler reminded her to put all fives in the pager. Approximately 20 minutes later, Russell backed his car up to the front door of Bush's apartment and went inside. Russell gave Bush $100 and agreed to take her to her mother's house. As the three left Bush's apartment, Fowler was observed holding the package. Russell and Fowler walked up to Russell's car. Upon seeing that the trunk of Russell's car had been opened, the police moved in and arrested Russell and Fowler.
In November, 1997, Russell was indicted for Possession of Cocaine, Possession of Marijuana, Complicity to Commit Possession of Cocaine, Complicity to Commit Possession of Marijuana, Conspiracy to Commit Possession of Cocaine, and Conspiracy to Commit Possession of Marijuana. In December, 1997, Russell moved to suppress the evidence seized by the police, and, in the alternative, to dismiss the indictment. After holding a hearing on the matter, the trial court overruled Russell's motion in its entirety.
A jury trial was held on the charges on May 19-20, 1999. The State presented the testimony of Bush, Rockwell, and Bollinger, among others, who testified to the facts related above. At the close of its case, the State sought and received permission to amend the first two counts of the indictment from Possession of Cocaine and Marijuana to Attempted Possession of Cocaine and Marijuana. Russell chose not to testify on his own behalf, but instead, presented the testimony of Fowler, who testified that Bush was his girlfriend; that the drugs belonged to him, not Russell; and that he never told Russell about the drugs. Fowler acknowledged that he had previously told police that the drugs were Russell's and that he did not know anything about them; however, Fowler testified that he decided to tell the truth, because he recently learned that he was HIV-positive, and did not want an innocent man to go to jail.
Following deliberations, the jury convicted Russell on all six counts. The trial court sentenced Russell to a total of seventeen years in prison, but because of the concurrent nature of some of the sentences, Russell's actual term of incarceration was set at nine years. None of the six counts were merged.
On appeal, this court found "the trial court's sentencing of Russell on all of the attempt, conspiracy, and complicity counts to be plain error" because it violated R.C. 2923.01(G). State v. Russell (Dec. 10, 1999), Montgomery App. No. 17278, unreported. After finding Russell's remaining assignments of error to be unripe for consideration, we remanded the case "for a determination of which of the six counts are to be merged with which of the others."
On remand, the parties submitted memoranda on the re-sentencing issue. In its memorandum, the State requested that the trial court merge all of the counts for sentencing purposes, and sentence Russell under count six of the indictment, which charged Russell with Complicity to Commit Possession of Cocaine, a felony of the second degree requiring a prison term of two to eight years. The State further requested that Russell receive the maximum eight-year term because of the seriousness of his offense, and because his co-defendant Fowler was presently serving a seven-year sentence.
In his memorandum, Russell requested that he be sentenced to the "minimum of one year under count six of the verdict[.]" Russell argued that because the State had reduced the Possession of Drug charges in the first two counts of the indictment to Attempted Possession of Drugs, it should have reduced count six to Complicity to Commit Attempted Possession, thereby making it a felony of the third degree requiring a prison term of one to five years. Russell further requested that the trial court impose the minimum sentence of one year, without providing any rationale for the requested leniency.
At the re-sentencing hearing held on February 1, 2000, the trial court indicated that it did not believe the Complicity to Commit Possession of Cocaine charge had been proven, but that Complicity to Commit Attempted
Possession of Cocaine had been proven. Accordingly, the trial court sentenced Russell for a felony of the third degree, as Russell had requested. However, the trial court imposed a prison term of five years, given the seriousness of the offense, the likelihood of recidivism on Russell's part, and the need to protect the public from the large amount of drugs involved.
Russell appeals from his conviction and sentence. The State of Ohio cross-appeals.
 II
Russell's First Assignment of Error states:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT [sic] ALLOWING THE STATE TO CHANGE THE INDICTMENT TO CONFORM TO THE EVIDENCE AT THE CLOSE OF THE STATE'S CASE.
 Russell argues that the trial court erred by allowing the State to amend the first two counts of the indictment from Possession of Cocaine and Marijuana to Attempted Possession of Cocaine and Marijuana, because, according to Russell, the amendment changed the name and identity of the offenses charged in violation of Crim.R. 7(D), thereby depriving him of his constitutional right to formal notice of the charges being leveled against him. We disagree.
Crim.R. 7(D) provides in relevant part:
 The court may at any time before, during, or after a trial amend the indictment, information, complaint or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged.
(Emphasis added.)
However, Crim.R. 31(C) provides:
 The defendant may be found not guilty of the offense charged but guilty of an attempt to commit it if such an attempt is an offense at law. When the indictment, information, or complaint charges an offense including degrees, or if lesser offenses are included within the offense charged, the defendant may be found not guilty of the degree charged but guilty of an inferior degree thereof, or of a lesser included offense. (Emphasis added.)
 In State v. Washington (1978), 56 Ohio App.2d 129, the defendant was indicted for aggravated robbery. Just prior to the commencement of the trial, the prosecutor moved to amend the aggravated robbery charge to robbery. The trial court permitted the amendment over defendant's objection. On appeal to this court, defendant argued that permitting the amendment changed the name and identity of the charged crime in violation of Crim.R. 7(D). This court acknowledged that the amendment changed the name and identity of the offense, but concluded that if robbery is a lesser included offense of aggravated robbery the change would be permissible under Crim.R. 31(C). In support of this conclusion, we reasoned that "[i]f the jury could find the appellant guilty of a lesser included offense [pursuant to Crim.R. 31(C)], then obviously there would be no error in the court's reducing the charge to that lesser included offense in the first instance." Id. at 139. (Emphasis added.) However, this court went on to find that robbery was not a lesser included offense of aggravated robbery and, therefore, concluded it was error to amend the indictment.
The language in Washington concerning Crim.R. 31(C) and lesser included offenses is relevant to the issue before us concerning attempts. If the jury was able to find Russell guilty of Attempted Possession of Cocaine or Marijuana, then, pursuant to Crim.R. 31(C), there was no error in the trial court's permitting the State to amend or reduce the charge to Attempted Possession of Cocaine or Marijuana.
Additionally, in State v. Stuber (1990), 71 Ohio App.3d 86, the court rejected a criminal defendant's argument that he had been unfairly convicted of a lesser included offense because he had not been formally charged with it, and, therefore, was unable to adequately defend against it, stating as follows:
 It is not necessary for the prosecution or the court to formally present a defendant with written charges of each lesser offense which may be proven by elements necessary for proof of the greater. A greater offense properly charged a fortiori charges the lesser included offenses by implication:
 "Where the elements of a separate offense are present with others in the offense charged in an indictment, such separate offense is a lesser included offense." State v. Kuchmak (1953), 159 Ohio St. 363, * * * paragraph two of the syllabus.
 Crim. R. 31(C) provides that upon trial of a criminal charge, "if lesser offenses are included within the offense charged, the defendant may be found not guilty of the degree charged but guilty of * * * a lesser included offense."
 This same reasoning applies with equal force to attempts. It is not necessary for the prosecution or the trial court to formally charge a defendant with attempt to commit an offense because an offense, properly charged, charges an attempt along with any lesser included offenses by implication.
R.C. 2923.02(A) defines "attempt" as follows:
 No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.
 Russell argues that this language creates a different, new element to the crime which changes its name and identity. We disagree. This language does not add an element to the offense formally charged; instead, it merely deletes the implied requirement that the act forming the charged offense be successful, finished, or completed. Thus, "attempts" are commonly referred to as inchoate crimes. See Black's Law Dictionary (6th Ed. 1990) 761 (defining, "inchoate" as imperfect; partial; unfinished; begun, but not completed; and noting that included in the definition of "inchoate crimes" in the Model Penal Code are attempts, solicitation, and conspiracy). Therefore, just as it is not necessary for a criminal defendant to be formally charged with each lesser included offense of which he may be found guilty, since properly charging the greater offense charges the lesser included offenses by implication, Stuber, supra, it is not necessary that he be formally charged with attempt, since charging the principal offense charges an attempt by implication.
Russell's First Assignment of Error is overruled.
 III
Russell's Fourth Assignment of Error states:
 THE [TRIAL] COURT ERRED TO THE DETRIMENT OF APPELLANT WHEN IT DID NOT DISMISS THE STATE'S CASE AT THE CLOSE OF TRIAL DUE TO LACK OF EVIDENCE.
 Russell argues that the trial court erred by failing to dismiss the complicity charges on the ground that the State failed to present evidence to corroborate the testimony of his alleged accomplice, Wytina Bush, and, therefore, his convictions on the charges of Complicity to Possess Cocaine and Marijuana violate R.C. 2923.03(D). We disagree.
Formerly, R.C. 2923.03(D) provided:
 No person shall be convicted of complicity under this section solely upon the testimony of an accomplice, unsupported by other evidence.
 However, R.C. 2923.03(D) was subsequently amended. The corroboration requirement was deleted, and substituted in its place is a requirement that the trial court issue a cautionary instruction to the jury warning of the potentially unreliable nature of testimony from an accomplice.
The corroboration requirement has been retained for the offense of Conspiracy in R.C. 2923.01(H)(1), which provides:
 No person shall be convicted of conspiracy upon the testimony of a person with whom the defendant conspired, unsupported by other evidence.
 However, even if Russell meant to raise this argument with respect to his convictions for Conspiracy to Possess Cocaine and Marijuana, it still would not have succeeded, since Bush's testimony was supported by other evidence.
Bush testified that Russell arranged with her to have a package delivered by Federal Express to her home at 5079 North Norris Drive, Dayton, Ohio, on August 20, 1997. The package was to be delivered under the name, "Tina Smith." Bush was to sign for the package under that name, and was to page Russell with all "fives" once it arrived. Russell was to retrieve the package from Bush's home and to pay Bush $100 in exchange for her assistance. The evidence in the record corroborating Bush's testimony showed that the Dayton police stationed at the airport intercepted a Federal Express package addressed to a "Tina Smith," at 5079 North Norris Drive in Dayton, Ohio. The package contained cocaine and marijuana. When a police officer disguised as a Federal Express driver brought the package to Bush's door, Bush introduced herself as "Tina Smith," and signed for the package under that name. Minutes later, Bush was observed going next door. Twenty minutes later, Russell arrived. The police observed Russell and Fowler leave the apartment and walk up to trunk of Russell's car, with Fowler carrying the package. When the trunk of Russell's car was opened, the police moved in. The police subsequently recovered two $50 bills from Bush. This evidence supported Bush's testimony, tended to connect Russell to the crime, and tended to identify Russell as a guilty actor. See State v. Pearson
(1980), 62 Ohio St.2d 291, 295 (discussing quality and type of evidence necessary to satisfy corroboration requirement of former R.C. 2923.03(D).
Accordingly, Russell's Fourth Assignment of Error is overruled.
 IV
Russell's Second Assignment of Error states:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT BY NOT INSTRUCTING THE JURY ON THE TESTIMONY OF A CO-CONSPIRATOR.
 Russell argues that the trial court committed plain error by not issuing a cautionary instruction to the jury warning of the potentially unreliable nature of testimony from a co-conspirator, as mandated by R.C.2923.01(H)(2), which provides:
 If a person with whom the defendant allegedly has conspired testifies against the defendant in a case in which the defendant is charged with conspiracy and if the testimony is supported by other evidence, the court, when it charges the jury, shall state substantially the following:
 The testimony of an accomplice that is supported by other evidence does not become inadmissible because of the accomplice's complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect the witness' credibility and make the witness' testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.
 Russell acknowledges that he did not raise this argument at trial, and, therefore, it must be reviewed under the plain error standard. Plain error exists where, but for the trial court's error, the outcome of the proceedings clearly would have been different. State v. Underwood (1983), 3 Ohio St.3d 12, 14. "[T]he plain error rule should be applied with utmost caution and should be invoked only to prevent a clear miscarriage of justice." Id.
Here, Russell's defense counsel vigorously attacked Bush's credibility. The fact that Bush had a motive to lie to help extricate herself from the situation was obvious. Indeed, during his opening statement, defense counsel told the jury that the evidence would show that Bush was not indicted because the State "needed her to lie," and at one point during his closing statement, defense counsel rhetorically asked the jury, "[d]on't you find it strange, she [Bush] was never charged?" Under these circumstances, the jury could not possibly have been unaware that there were potential problems with Bush's credibility; nevertheless, it chose to believe her. This may be due in part to the fact that Bush's testimony was corroborated by other evidence in the record, as we have noted. In light of the foregoing, Russell has failed to demonstrate that the outcome of his trial would clearly have been different had the trial court not omitted the cautionary instruction.
Russell's Second Assignment of Error is overruled.
 V
Russell's Fifth Assignment of Error states:
 THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION OF DRUG POSSESSION.
 Russell argues that the State failed to present sufficient evidence to support "a conviction of drug possession," because it failed to show that he actually or constructively possessed the package containing the cocaine and marijuana. However, as the State points out, Russell was not convicted of Possession of Cocaine and Marijuana, but rather, Attempted Possession of Cocaine and Marijuana; the State was not required to prove that Russell ever acquired actual or constructive possession of the contraband in order to obtain a conviction on those counts.
Russell's Fifth Assignment of Error is overruled.
 VI
Russell's Third Assignment of Error states:
 THE [TRIAL] COURT ERRED IN ALLOWING APPELLANT TO BE CONVICTED OF AN ATTEMPT TO COMMIT A SPECIFIC OFFENSE AND CONSPIRACY.
 Russell argues that his convictions on Attempt to Possess Cocaine and Marijuana, and Complicity to Commit Possession of Cocaine and Marijuana preclude his conviction on the charges of Conspiracy to Commit Possession of Cocaine and Marijuana pursuant to R.C. 2923.01(G). However, this is the same argument that Russell presented in his first appeal, which we sustained. See Russell, supra. We remanded the case with a mandate to the trial court to determine "which of the six counts are to be merged with which of the others," which the trial court did. Id. Because this error in the trial court's initial judgment has been cured, we need not address the error again in this appeal. The judgment from which this appeal is taken is not tainted by the error of which Russell complains.
Russell's Third Assignment of Error is overruled.
 VII
The State of Ohio's sole assignment of error on cross-appeal states:
 THE TRIAL COURT ERRED WHEN IT FAILED TO FOLLOW THE MANDATE OF THIS COURT ON REMAND FOR THE LIMITED PURPOSE OF RE-SENTENCING.
 The State argues that the trial court exceeded the scope of its authority on remand by finding that there was a failure of proof on the sixth count of the indictment, charging Russell with Complicity to Commit Possession of Cocaine, a felony of the second degree, and modifying the charge to Complicity to Commit Attempted Possession of Cocaine, a felony of the third degree. The State acknowledges that the five-year prison term imposed upon Russell falls within the sentencing guidelines for felonies of the second degree, but argues that this is merely "happenstance." The State argues that the trial court misapplied the law, and requests that we reinstate Russell's conviction on the sixth count of the indictment and remand this matter for re-sentencing as a felony of the second degree. We find the State's argument persuasive.
Absent extraordinary circumstances — for example, an intervening decision of the Supreme Court of Ohio or of the United States — a trial court has no discretion to disregard the mandate of a reviewing court from a previous appeal in the same case. Nolan v. Nolan (1984),11 Ohio St.3d 1, syllabus. In Russell, supra, this court remanded the case to the trial court for the limited purpose of determining "which of the six counts are to be merged with which of the others." On remand, the trial court did not limit itself to that narrow question. Instead, the trial court considered whether the State had presented sufficient evidence to prove its charge of Complicity to Commit Possession of Cocaine, leveled against Russell. Finding that the State had not proven that charge, but had certainly shown an attempt, the trial court modified the charge to Complicity to Commit Attempted Possession of Cocaine, a felony of the third degree, and sentenced him accordingly. In doing so, the trial court exceeded the scope of its remand as set forth by this court in Russell, supra. Moreover, notwithstanding the trial court's finding to the contrary, there is sufficient evidence in the record to support Russell's conviction for Complicity to Commit Possession of Cocaine.
In determining whether there was sufficient evidence presented at trial to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
R.C. 2923.03(A) provides, in relevant part, that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." No person can be convicted of aiding and abetting unless an offense is actually committed, but a person can be convicted of complicity in an attempt to commit an offense. R.C. 2923.03(C).
Here, there was sufficient evidence to show that Russell aided and abetted Fowler in committing the offense. Fowler admitted that the package containing the cocaine and marijuana was his, and was observed by Dayton police in actual possession of the package. Although Fowler also testified that Russell was unaware of what was in the package, a jury can believe all, part, or none of what a witness says. State v. Antill
(1964), 176 Ohio St. 61, 67. Once Fowler was in actual possession of the package containing cocaine and marijuana, the offense of Possession of Cocaine and Marijuana was complete. There was evidence to show that Russell aided and abetted Fowler in committing that offense, by arranging to have the package delivered to Bush's residence in exchange for paying her $100, and by providing Fowler with transportation to and from the place where the package was delivered.
In light of the foregoing, the trial court is instructed to re-instate Russell's conviction on the sixth count of the indictment for Complicity to Commit Possession of Cocaine, a second degree felony, and to sentence Russell to a mandatory term of imprisonment within the range from two to eight years, within its sound discretion, pursuant to R.C.2925.11(C)(4)(d).
The State's sole assignment of error is sustained.
 VIII
The State of Ohio's assignment of error having been sustained, and all of Russell's assignments of error having been overruled, the judgment of the trial court is Reversed, and this cause is Remanded for proceedings consistent with this opinion.
WOLFF and YOUNG, JJ., concur.