The appellant was indicted on January 27, 1977, for aggravated robbery which occurred on January 2, 1977, in violation of R. C.2911.01. This charge was reduced by the court, upon the motion of the prosecutor, to one of robbery, a violation of R. C.2911.02, and the appellant was convicted by a jury and sentenced therefor.
In this appeal there are six assignments of error. The *Page 130 
first assignment is that the trial court erred in overruling his pre-trial motion to suppress "all testimony relating to eyewitness identification of the defendant" because the procedures used were "impermissibly suggestive" in violation of due process.
There was a hearing and, at that hearing, the evidence adduced by the appellant indicated that the desk clerk and bellman at the hotel which was robbed early Sunday morning, January 2, 1977, went to police headquarters on Tuesday to look at photographs but did not find one of the robbers at that time. On January 7, the appellant was arrested and photographs of him were taken. At a lineup on the day of his arrest, the bellman unhesitatingly selected the appellant as the robber from a group of at least four men who did not differ markedly. (The appellant, in his testimony, contradicted the description of the lineup, but there is nothing in the record to indicate that it would have been an abuse of discretion for the trial judge to disbelieve him.) Subsequent thereto, a detective took approximately 15 photos to the desk clerk at the hotel and handed them to her for her perusal. She, unhesitatingly, and without suggestion or coaching, selected the appellant's photo from the group as being that of the robber. Later, at a preliminary hearing, she identified the appellant personally as the robber, again without prompting. Additionally, at an indeterminate time, but before the trial, both the clerk and the bellman were shown photos by a state parole officer from which they independently and self-motivatingly selected the appellant's photo.
No lawyer was present either at the lineup or during the photo selection process. However, the appellant was not formally charged until January 11, 1977, when an affidavit charging him with aggravated robbery was signed by the detective and filed. The evidence at the suppression hearing did not indicate or establish that the photos were selected subsequent to January 11 nor did it indicate that the appellant was represented by counsel prior to his being charged. The appellant was represented by counsel at the preliminary hearing. *Page 131 
The evidence at the suppression hearing did not indicate that the procedures used at the photo selection processes and at the lineup (if the trial court, as was its prerogative, disbelieved the appellant) were in any way suggestive, conducive to irreparable possibilities of mis-identification, or were instituted or used in any way to establish or to bolster the identification of the appellant as the robber. Quite to the contrary, the evidence was clear that the appellant and likenesses of him were at all times selected unhesitatingly by the two witnesses involved because of their independent recollections of him as the robber from the impressions they received at the time of the robbery under excellent observational circumstances.
Therefore, because it was not established that any of the pre-trial identification procedures were illegal due to procedures which were violative of due process requirements, the trial court was correct in overruling the motion to suppress.Stovall v. Denno (1967), 388 U.S. 293; State v. Hancock (1976),48 Ohio St.2d 147; State v. Perryman (1976), 49 Ohio St.2d 14. The appellant, in his brief, goes beyond the overruling of the pretrial motion to characterize the admission of the identification testimony at the trial as error. The appellant did not object when this testimony was offered and thus waived any possible error in this regard. State v. Lancaster (1971),25 Ohio St.2d 83. The first assignment of error is overruled.
The second assignment again claims error in overruling the motion to suppress identification testimony, this time on the ground that the lineup described hereinabove was illegal inasmuch as it was conducted in the absence of counsel for the appellant, thus depriving the appellant of his rights under theSixth and Fourteenth Amendments to the United States Constitution and under Section 10, Article I, of the Ohio Constitution. This contention is incorrect for several reasons.
In the first place, the motion contained no reference to theSixth Amendment, but was predicated solely on the ground of a violation of due process. In the second place, the lineup was held before the appellant was charged and *Page 132 
no attorney was necessary. State v. Sheardon (1972), 31 Ohio St.2d 20. In the third place, Section 10, Article I of the Ohio Constitution, with respect to counsel, confines its application to the trial. Fourthly, the in-court identification was not based upon the lineup, but upon the independent recollection of the witness. Finally, the appellant did not object at the trial to this witness' identification of him as the robber.
The second assignment of error is overruled.
The third assignment claims that the Court erred in refusing to grant the appellant's request for an in camera inspection of alleged prior statements made by the hotel clerk to the police and that this ruling was a denial of due process of law in that appellant's cross-examination rights were abridged. During the cross-examination of the desk clerk, it was developed that one of the police officers questioning the witness on the night of the robbery took some notes as to her description of the robber, but that she made no written or signed statement for the police. Thereupon, the appellant moved for an in camera inspection of the police officer's notes and this motion was overruled.
Criminal Rule 16(B)(1) (g) provides, in part:
"Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement."
As will be noted, the only statement subject to such a procedure is one which is written or recorded. The word "written" in this context does not refer to notes made by a detective talking to a witness during an investigation. The word "written" refers to a writing made by a witness or by someone else at that witness' direction. The word "recorded" also cannot refer to such notes as it refers only to a mechanical reproduction of a statement by tapes or the like; otherwise, it would be a writing, and a distinction between "written" and "recorded" would not be *Page 133 
necessary if the word "recorded" was merely another way of referring to a writing.
This construction that such notes made as a result of an oral interview are not referred to by this subsection of the rule is strengthened by comparing this subsection with subsection (B)(1)(a)(i) and (ii) of this same rule wherein a distinction is made between "relevant written or recorded statements" and "written summaries of any oral statement." The failure to include a reference to summaries of oral statements in the subsection under consideration when such reference was included in the prior subsection in the same rule indicates an intent to exclude oral statements and notes taken of them from the operation of subsection (g). Furthermore, it is even doubtful if the private notes of the detective could be classified as a written summary of an oral statement if such a category had been included in subsection (g).
It is clear to us that such memoranda were not included within the purview of this subsection because it would be incorrect to permit a perusal of notes made by a detective which do not have the imprimatur of the witness. The notes may or may not be accurate and a witness should not be bound by or cross-examined concerning them unless they have received his approval.
It is not evident from the record that the appellant suffered any prejudice from the procedure of the court. There is no constitutional right to discovery. Weatherford v. Bursey (1977),429 U.S. 545, 97 S. Ct. 837. The witness was thoroughly cross-examined and any and all conceivable discrepancies were thoroughly covered. The third assignment of error is overruled.
The fourth assignment of error is stated as follows:
The trial court erred when it denied appellant the opportunity to impeach the credibility of the state's leading witness by denying introduction into evidence of a prior inconsistent statement made by said witness."
This assignment of error is based upon the following transactions which occurred during the trial. First, during *Page 134 
the direct examination of the desk clerk who was robbed and who had already directly identified the appellant as the robber:
"Q. Do you recall the height and weight of the individual; was he a skinny, medium or fat person?
"A. Medium.
"Q. What about the height?
"A. Not under five, ten, could have been a little bit taller than that."
On cross-examination of this witness, the following occurred:
"Q. How tall are you, Miss Brown?
"A. Five-eight.
"Q. Do you recall testifying at a parole on-site hearing I believe it was the same day that you went to a preliminary hearing over in the Dayton Municipal Court?
"A. We talked twice, I don't remember which hearing was called what.
"Q. Do you remember an attorney, Mr. Eidelman (sic) asking you some questions?
"A. Sir, I can't remember you all's names, I don't remember his name.
"Q. Do you remember telling one of the attorneys that one that — strike that — there were two hearings you said you went to on the same day, is that right?
"A. Yes, sir.
"Q. Would that have been on January 21, 1977?
"A. Yes, sir.
"Q. All right, the first hearing you went to was where?
"A. What building, what room?
"Q. Was that in a courtroom?
"A. Yes, sir.
"Q. And the other hearing was not in a courtroom, right?
"A. Right.
"Q. At the hearing that was not in the courtroom, do you remember the question being asked, how tall was the man and you answered about my height?
"A. I don't remember it but if you have got it written down,I suppose I said it. [Emphasis added.] *Page 135 
"Q. I'm asking if you remember the question was put this way, you said, `What's that description given to the police?' Answer, `About my height, five foot eight inches,' do you recall that?
"A. No.
"Q. Again the question was asked, `Taller or shorter' and do you remember asking, `He looked about as tall as me,' do you remember that?
"A. No.
"Q. You're five foot eight?
"A. Yes, sir.
"Q. Today you say that he's not under five foot ten, is that right?
"A. Yes sir.
"Q. Are you certain that he was not, that he was not under five foot ten or could he have been about your height?
"A. He was taller than me.
"Q. You don't remember telling Mr. Eidelman (sic) or another attorney that he was about as tall as me, about my height?
"A. No."
Finally, during the presentation of the case of the defense, there occurred the following:
"Mr. Blumenthal: Your Honor, the first witness the defense would call is Sanford Edelman.
"Sanford Edelman, the witness, having been duly sworn according to law, was examined and testified upon his oath as follows:
 "Direct Examination
"By Mr. Blumenthal:
"Q. I'd like you to state your name and occupation.
"A. Sanford Edelman, I'm an attorney.
"Q. Mr. Edelman, do you know Lynwood Washington?
"A. Yes, sir.
"Q. Do you know a lady by the name of Barbara Brown?
"A. Yes, I do.
"Q. On the 21st of January, 1977, did you have occassion to come in contact with either or both of those persons? *Page 136 
"A. Yes.
"Q. Where was that?
"A. That was at an on-site hearing in which I represented Mr. Washington.
"Mr. Langer: Excuse me, I would, at this point, object and may I approach the bench?
"Thereupon, and (sic) off-the-record discussion was held between the court and counsel.
"Mr. Blumenthal: Thank you, Mr. Edelman, for coming. I have no further questions.
"The Court: There will be no further questions, thank you.
"Mr. Blumenthal: I would ask you, since there was an objection made and the fact I'm not asking any further questions is on the basis that that objection will be sustained.
"The Court: Yes, we will place in the record the content of the motion and the reason for its being sustained."
There is nothing further in the record to indicate what the basis of the objection was or why it was sustained; what, if anything, Mr. Edelman was going to testify about; or why his testimony was not received. Thus, the record does not demonstrate what, if any, error occurred when the objection was sustained. It is asserted in the appellant's brief that Mr. Edelman was going to testify that Ms. Brown did, at the parole hearing, testify that the robber was about 5' 8" tall in order to impeach her. But, a party's brief is not part of the record on appeal and it is fundamental that it is incumbent upon the appellant to provide a record which will exemplify the errors he claimed occurred.
The transcript of the trial seems to indicate that the appellant was reading from a transcript of the parole hearing when he queried Ms. Brown as to her prior testimony. If so, in the absence of an adequate legal excuse for the nonproduction of the stenographer, Mr. Edelman's testimony should have been rejected as not being the best evidence.
Although it is academic under the circumstances, if *Page 137 
it had been error to refuse to admit Mr. Edelman's testimony, it would appear to have been harmless. The witness did admit the possibility of having testified slightly differently on a prior ocasion and the jury received this testimony and could be expected to use it in evaluating the credibility and memory of the witness. Nevertheless, since the claimed error does not appear of record, this fourth assignment of error is overruled.
The fifth assignment of error is based upon the action of the trial judge in amending the indictment on the motion of the prosecutor so as to change the crime charged against the appellant from aggravated robbery to robbery. The statutes in question read, in part, as follows:
"2911.01 Aggravated robbery.
"(A) No person, in attempting or committing a theft offense as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following: (1) Have a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code on or about his person or under his control; (2) Inflict, or attempt to inflict serious physical harm on another."
"2911.02 Robbery.
"(A) No person, in attempting or committing a theft offense as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall use or threatenthe immediate use of force against another." (Emphasis added.)
The pertinent portion of the indictment in which the grand jury charged the appellant with aggravated robbery reads as follows:
"And the grand jurors of this County, in the name and by the authority of the State of Ohio, upon their oaths, do find and present that: Lynwood Lovelle Washington, on or about the 2d day of January, 1977, in the County of Montgomery, aforesaid, and State of Ohio, in committing a theft offense, did have a deadly weapon, towit: a .32 caliber revolver, on or about his person or under his control; contrary to the form of the statute (in *Page 138 
violation of Section 2911.01(A)(1) of the Ohio Revised Code) in such case made and provided. * * *."
Just prior to the commencement of the trial, the prosecuting attorney orally moved to reduce the charge from aggravated robbery to robbery by striking the words "did have a deadly weapon, to-wit: a .32 caliber revolver on or about his person or under his control" from the indictment, by replacing them with the words "did threaten the use of immediate force against another, to-wit: Barbara Brown * * *" and by substituting "2911.02" for "2911.01(A)(1)."
The appellant agreed to the removal of the words charging possession of a deadly weapon, but objected to the addition of the other words (he said nothing about changing the numerical designation of the statute) on the ground that Criminal Rule 7 proscribed such a change since it would change the identity of the crime. He also objected to changing the name of the crime.
Criminal Rule 7(D), in pertinent part, provides:
"The court may at any time before, during, or after a trial amend the indictment, information, complaint or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."
The court overruled the appellant's objections and granted the prosecutor's motion to amend the indictment verbatim. The case then proceeded to trial on the indictment, as amended, and, at the conclusion thereof, the court instructed the jury as to the elements of the crime of robbery under R. C. 2911.02 and theft under R. C. 2913.02(A) (4). The jury found the appellant guilty of robbery and he was sentenced therefor.
The appellant asserts in his brief that the court's amendment order was error for the same reason which he argued in opposition thereto; viz, that the name and identity of the crime were illegally changed. That the name and identity of the charged crime were changed there can be no doubt, but, the appellee, on the other hand, *Page 139 
argues that such change was permissible because robbery is a lesser included offense to aggravated robbery. If this is so, then there was no error because Criminal Rule 31 (C), in pertinent part, provides as follows:
"When the indictment, information, or complaint charges an offense including degrees, or if lesser offenses are included within the offense charged, the defendant may be found not guilty of the degree charged but guilty of an inferior degree thereof, or of a lesser included offense."
This rule follows a portion of R. C. 2945.74 almost word for word. If the jury could find the appellant guilty of a lesser included offense, then obviously there would be no error in the court's reducing the charge to that lesser included offense in the first instance.
The question then is whether or not robbery as it was charged by the amended indictment and as it is defined by R. C. 2911.02
is a lesser included offense to aggravated robbery as it was charged by the grand jury in the original indictment and as it is defined by R. C. 2911.01(A)(1). We do not consider the related question as to whether or not robbery as defined by R. C. 2911.02 is a lesser included offense to aggravated robbery as it is defined by R. C. 2911.01(A)(2) because aggravated robbery under R. C. 2911.01(A)(2) is a separate and distinct offense from aggravated robbery under 2911.01(A)(1). State v.Ferguson (1964), 175 Ohio St. 390; State v. Beach, unreported, Second Appellate District, No. 5419.
The term "lesser included offense" is defined as follows:
"An offense is a lesser included offense, where all the elements of such offense are present with others in the offense charged in an indictment." (Emphasis ours.) State v. Hreno
(1954), 162 Ohio St. 193, paragraph two of the syllabus. In the opinion, the court went on to say, at page 196:
"Where the elements of another offense are not included among those of the offense charged in the indictment, the defendant cannot be found guilty of such offense under the indictment." *Page 140 
It is readily apparent that, under this test, the offense described in R. C. 2911.02, which the court attempted to charge the appellant with committing by its amendment of the indictment, is not a lesser included offense to that offense charged by the grand jury in the indictment under R. C.2911.01(A)(1) since the element of "threatening the immediate use of force" (the prosecutor's transposition of "immediate" does not affect our conclusion) is not present in the offense charged in the indictment as it is not present in R. C.2911.01(A)(1).
An offender could commit a theft offense while in possession of a deadly weapon without using or threatening the immediate use of force. He could have a gun in his pocket while he surreptitiously stole some object or counterfeited money or the like. Force is not an intrinsic part of aggravated robbery under the statute as it must be in order to be an element thereof. If it is not an element of aggravated robbery, robbery cannot be a lesser included offense to aggravated robbery.
If that element (of force) could have been included in the indictment and had been so included, then it would not have been necessary, in the first place, to amend the indictment so as to add it and the jury could have gone ahead and found the appellant guilty of the lesser included offense which included it. And if the missing element was not included in the indictment, then, simply because the evidence proved that element, the jury could not go ahead and find the accused guilty of the crime which included it because the accused would have been tried for one crime and have been found guilty of another. The elements of the lesser included offense must, clearly and unequivocally, be contained in the language of the greater offense and their presence cannot be made to depend upon the evidence or upon interpretation. All of the elements of a crime for which an alleged offender can be charged and called upon to answer must be alleged initially and cannot be supplied by amendment.
For the reason that robbery under R. C. 2911.02 is a separate and distinct offense from aggravated robbery *Page 141 
under R. C. 2911.01(A)(1), it was error to amend the indictment. An indictment cannot be amended at bar so as to change one infamous offense to the other because unless a person waives the grand jury procedure he cannot be held to answer for an infamous crime, unless he is indicted for it by a grand jury. Section 10, Article I, Constitution. "The court cannot amend an indictment so as to supply an essential element of a crime." State v.Beach, supra (see also State v. Parker (1948), 150 Ohio St. 22;State v. Cimpritz (1953), 158 Ohio St. 490; State v. Wozniak
(1961), 172 Ohio St. 517, 520).
The prosecutor argued that no harm was done since the language of the indictment sufficiently advised the appellant as to the nature of the charge. Even if true, this would be beside the point when the charge is essentially brought by the court as it was here. The reason that a grand jury must charge a person with a felony is grounded deeply in our history. It was designed so as to eliminate arbitrary charges of illicit activity. The grand jury's purpose is to sift the evidence and to detect therefrom if it is sufficient to reasonably conclude that there is probable cause to believe that the accused committed an offense. If we now permit judges to substitute different crimes for those charged by the grand jury, we are back to the arbitrary accusations by individual authorities which were formerly so misused and consequently dreaded by our forefathers; notice given to an accused or his lack of surprise is entirely beside the point. This can only have weight where related details of the offense are concerned; not with respect to the elements of a crime; all of which must be charged by a grand jury.
The fifth assignment of error is well taken and it is sustained.
The sixth assignment of error is stated thusly:
"The trial court erred in sustaining the prosecution's objection to admission into evidence of the stipulations of the testimony of Mr. and Mrs. Jacob as this testimony was relevant evidence tending to prove appellant's innocence."
This assignment arose from a transaction where, at *Page 142 
the outset of the trial, the appellant stated to the court that the parties had agreed to stipulate the particulars of what the testimony of two named witnesses would contain and the appellant offered to submit this "stipulation" to the jury in lieu of calling the witnesses to testify. Nothing was intimated concerning their unavailability.
The appellee stated that he agreed to the "stipulation," but objected to it as evidence because it was irrelevant. The court sustained the appellee's objection on the ground of irrelevancy.
We do not find it necessary to consider the question of the relevancy of the proposed testimony inasmuch as it was never properly offered for the tribunal's consideration. In the first place, there was no "stipulation" involved in this transaction. A stipulation, by definition, is an agreement with respect to some matters before the court and their regulation. 50 Ohio Jurisprudence 2d 353, Stipulation, Section 5. When the appellee refused to agree to the submission of the agreed-upon particulars of the proposed testimony in lieu of calling the witnesses, there was, perforce, no agreement concerning the method of submission of the evidence, and, thus, no "stipulation." The agreement as to what the witnesses would say was not a stipulation.
Secondly, the appellant should have offered the witnesses to testify and, not having done so, cannot predicate any error upon a refusal to accept the evidence when it was not properly offered.
The sixth assignment of error is overruled.
Judgment reversed.
KERNS, and McBRIDE, JJ., concur.