OPINION
{¶ 1} Appellant, Jeronique D. Cunningham ("Cunningham"), appeals the February 11, 2004 judgment entry of the Common Pleas Court of Allen County denying postconviction relief to Cunningham and the February 12, 2004 judgment entry of the Common Pleas Court of Allen County denying Cunningham leave of court to conduct discovery and denying Cunningham's motion for funds to retain a firearms and ballistics expert.
 {¶ 2} The pertinent facts and procedural history of the case are as follows. On January 3, 2002, Cunningham and his brother, Cleveland Jackson ("Jackson"), went to the residence of Loyshane Liles ("Shane") at 503 East Eureka Street in Lima, Ohio, to buy some drugs and presumably to rob Shane. Shane was not at the residence when they arrived, but several friends and family members were present. Shane's girlfriend, Tomeaka Grant, called Shane to tell him Cunningham was at the residence and reported that Shane would be home shortly. Cunningham and Jackson waited in the living room, where three teenagers, Dwight Goodloe, Coron Liles, and Leneshia Williams, were watching a movie and talking. Tomeaka Grant went into the kitchen where she visited with her brother, James Grant, and his three-year-old daughter, Jala Grant, and a family friend, Armetta Robinson.
 {¶ 3} Shane arrived at the residence shortly after Cunningham and Jackson arrived. Shane and Jackson then spoke quietly on the stairway in the living room about Shane selling drugs to Jackson. Cunningham remained in the living room seated on the couch with the three teenagers. As Shane and Jackson continued to talk, Cunningham pulled out a gun and ordered the three teenagers into the kitchen. When the teenagers hesitated, Cunningham struck Coron Liles hard in the jaw with the gun. The teenagers then ran into the kitchen, followed by Cunningham. Cunningham then held the seven people in the kitchen at gunpoint.
 {¶ 4} Meanwhile, Jackson also pulled a gun on Shane on the living room stairway, almost simultaneously with Cunningham pulling his gun. Jackson walked Shane upstairs at gunpoint and demanded drugs and money from Shane. Jackson walked Shane back downstairs and then tied Shane's hands together behind his back and guided Shane to the kitchen. As Shane walked into the kitchen, Jackson shot him in the back and Shane fell to the floor. Cunningham and Jackson then began firing their guns at the group of people in the kitchen. When the shooting stopped, the victims heard the guns clicking. Cunningham and Jackson then left the residence through the front door.
 {¶ 5} Shane, assisted by Tomeaka Grant, called 9-1-1. Coron Liles and Dwight Goodloe ran out the backdoor and flagged down a woman who drove them to the hospital. The remaining victims were found at the scene by the police and emergency medical personnel. Three-year-old Jala Grant and seventeen-yearold Leneshia Williams were both killed as a result of gunshot wounds to their heads. The remaining victims all suffered gunshot injuries as well.
 {¶ 6} On January 10, 2002, Cunningham was indicted on the following ten counts: count one charged Cunningham with the aggravated murder of Jala Grant, in violation of R.C. 2903.01(B); count two charged Cunningham with the aggravated murder of Leneshia Williams, in violation of R.C. 2903.01(B); count three charged Cunningham with aggravated robbery, in violation of R.C.2911.01(A)(1); counts four through nine charged Cunningham with the attempted aggravated murders of Armetta Robinson, Loyshane Liles, Tomeaka Grant, Coron Liles, Dwight Goodloe, Jr., and James Grant, respectively, in violation of R.C. 2923.02 and R.C.2903.01(B); and count ten charged Cunningham with having weapons under disability, in violation of R.C. 2923.13(A)(2). Counts one and two also included two death penalty specifications pursuant to R.C. 2929.04(A)(5) and R.C. 2929.04(A)(7), as well as gun and repeat violent offender specifications. Each non-capital count also included gun and repeat violent offender specifications. The trial court severed count ten prior to trial and the count was later dropped by the prosecution.
 {¶ 7} A jury trial began in this case on June 10, 2002. The jury returned verdicts of guilty on counts one through nine, as well as the accompanying death penalty and firearm specifications on June 18, 2002. The penalty phase of the trial began on June 20, 2002. The trial court merged the aggravating circumstances, so that only the R.C. 2929.04(A)(5) specification that each aggravated murder was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons was before the jury.
 {¶ 8} The jury subsequently recommended that Cunningham be sentenced to death. The trial court held a separate hearing on June 25, 2002, wherein the court adopted the jury's recommendation and ordered that Cunningham be sentenced to death on the two counts of aggravated murder. The trial court also sentenced Cunningham to terms of imprisonment on the non-capital convictions. On August 12, 2002, Cunningham filed a direct appeal in the Ohio Supreme Court, where the case is currently pending.
 {¶ 9} Cunningham filed his petition for postconviction relief on August 1, 2003 in the Common Pleas Court of Allen County. The State filed an answer and motion to dismiss on October 24, 2003. Cunningham also filed a motion for leave to pursue discovery and a motion for funds to retain a ballistics and firearms expert. On February 11, 2004, the trial court dismissed Cunningham's petition for postconviction relief. On February 12, 2004, the trial court denied Cunningham's motions for discovery and funds for expert assistance. It is from these judgments that Cunningham now appeals, asserting the following three assignments of error.
The trial court erred in dismissing appellant'spost-conviction petition where he presented sufficient operativefacts to merit relief or, at bare minimum, an evidentiaryhearing.
 The trial court erred when it denied petitioner'spost-conviction petition without first affording him theopportunity to conduct discovery.
 The trial court erred when it overruled appellant's motion forfunds to employ an expert.
 {¶ 10} In his first assignment of error, Cunningham argues that the trial court erred in dismissing his postconviction petition for the following reasons: (1) Cunningham raised violations of his constitutional rights that warranted relief; (2) the petition contained sufficient operative facts, meriting an evidentiary hearing; and (3) Cunningham's grounds were supported by evidence dehors the record and could not have been fully litigated on direct appeal. In its judgment entry denying postconviction relief, the trial court concluded that Cunningham had failed to meet his burden of asserting facts which would entitle him to relief and that most of the claims could have been raised at trial or on direct appeal and were therefore barred by the doctrine of res judicata.
 {¶ 11} This court clearly set forth the standards applicable to the review of petitions for postconviction relief in State v.Yarbrough, 3d Dist. No. 17-2000-10, 2001-Ohio-2351, 2001 WL 454683. R.C. 2953.21 governs postconviction relief and provides "a remedy for a collateral attack upon judgments of conviction claimed to be void or voidable under the United States or the Ohio Constitution." Id. at *3. Therefore, in order to prevail on a petition for postconviction relief, a petitioner must establish that there was a denial or infringement of his constitutional rights. See R.C. 2953.21(A)(1).
 {¶ 12} This court has noted though that "[t]he postconviction statute is not intended * * * to permit `a full blown retrial of the [petitioner's] case.'" Yarbrough, 2001 WL 454683 at *3, citing State v. Robison (June 19, 1989), 4th Dist. No. 88 CA 15, 1989 WL 72802. Since postconviction petitions are limited to claimed constitutional violations, "procedural or other errors at trial not involving constitutional rights are not relevant or subject to review." Yarbrough, 2001 WL 454683 at *3, citingRobison, 1989 WL 72802.
 {¶ 13} A petitioner is not necessarily entitled to an evidentiary hearing when a petition for postconviction relief is filed. R.C. 2953.21(C); see also State v. Calhoun,86 Ohio St.3d 279, 1999-Ohio-102, 714 N.E.2d 905. Rather, the trial court shall determine whether there are substantive grounds for relief before granting a hearing on the petition. R.C. 2953.21(C). In order to show that substantive grounds for relief exist, a petitioner must produce sufficient credible evidence to demonstrate that he suffered a violation of his constitutional rights. R.C. 2953.21(A)(1); Calhoun, 86 Ohio St.3d at 283. Ohio courts have held that it is not unreasonable to require a petitioner to show in his postconviction petition that the alleged errors resulted in prejudice before a hearing on the petition is scheduled. See Calhoun, 86 Ohio St.3d at 283;State v. Jackson (1980), 64 Ohio St.2d 107, 112,413 N.E.2d 819. Therefore, before a hearing is granted, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the errors alleged in the petition for postconviction relief. Calhoun,86 Ohio St.3d at 283, citing Jackson, 64 Ohio St.2d at syllabus. The trial court has the sound discretion to decide whether to grant the petitioner an evidentiary hearing. Calhoun,86 Ohio St.3d at 284.
 {¶ 14} The trial court must examine the petition, any supporting affidavits, any documentary evidence and all the files and records in the case when determining whether the petition contains substantive grounds for relief. R.C. 2953.21(C). While a trial court should give deference to sworn affidavits filed in support of the petition, the trial court may also exercise discretion in judging the credibility of the affidavits to determine whether to accept the affidavits as true statements of fact. Calhoun, 86 Ohio St.3d at 284.
 {¶ 15} The Ohio Supreme Court has applied the doctrine of res judicata to postconviction proceedings. State v. Reynolds,79 Ohio St.3d 158, 1997-Ohio-304, 679 N.E.2d 1131. The Court inState v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus, 226 N.E.2d 104 held that:
Under the doctrine of res judicata, a final judgment ofconviction bars a convicted defendant who was represented bycounsel from raising and litigating in any proceeding except anappeal from that judgment, any defense or any claimed lack of dueprocess that was raised or could have been raised by thedefendant at the trial, which resulted in that judgment ofconviction, or on an appeal from that judgment.
A claim for relief presented in a postconviction petition is, under the doctrine of res judicata, subject to dismissal without an evidentiary hearing when it presents a matter that could fairly have been determined on direct appeal and without resort to evidence dehors the record. Id.
 {¶ 15} In addition, the doctrine of res judicata has been specifically applied to postconviction proceedings alleging ineffective assistance of counsel. State v. Cole (1982),2 Ohio St.3d 112, syllabus, 443 N.E.2d 169.
Where defendant, represented by new counsel upon directappeal, fails to raise therein the issue of competent trialcounsel and said issue could fairly have been determined withoutresort to evidence dehors the record, res judicata is aproper basis for dismissing defendant's petition forpostconviction relief. (citations omitted.)
In the case sub judice, Cunningham was represented by different attorneys on appeal than at the trial level. Therefore, any claim of ineffective assistance of counsel which could fairly have been determined without resort to evidence dehors the record had to be brought on direct appeal or it is waived, and now barred by res judicata.
 {¶ 16} To overcome the barrier of res judicata, a petitioner must attach evidence dehors the record that is "competent, relevant and material" and that was not in existence or available for use at the time of the trial. State v. Jackson, 10th Dist. No. 01AP-808, 2002-Ohio-3330, ¶ 45, citing State v. Gipson
(Sept. 26, 1997), 1st Dist. Nos. C-960867, C-960881, 1997 WL 598397, *6. Such evidence "must meet some threshold standard of cogency; otherwise it would be too easy to defeat [the doctrine of res judicata] by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery." State v. Lawson (1995),103 Ohio App.3d 307, 315, 659 N.E.2d 362.
 {¶ 17} Appellate review of a trial court's disposition of a petition for postconviction relief presents mixed questions of law and fact. State v. Smith (Sept. 24, 1999), 11th Dist. No. 98-T-0097, 1999 WL 778376, *3; State v. Akers (Sept. 9, 1999), 4th Dist. No. 98 CA 33, 1999 WL 731066, *7. The trial court's factual findings will not be reversed unless they are against the manifest weight of the evidence. State v. Cornwell, 7th Dist. No. 00-CA-217, 2002-Ohio-5177, ¶ 28. Judgments will not be reversed, as being against the manifest weight of the evidence, if they are supported by some competent, credible evidence. Id., citing Gerijo, Inc. v. Fairfield, 70 Ohio St.3d 223, 226,1994-Ohio-432, 638 N.E.2d 533; C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, syllabus, 376 N.E.2d 578. Upon accepting such findings of fact, an appellate court then independently determines whether the trial court's conclusions of law are proper. Cornwell, 2002-Ohio-5177, at ¶ 28.
 {¶ 18} For purposes of clarity and logic, we have chosen to address the grounds for relief in a different order than that in which Cunningham discusses them. We begin by addressing the grounds which raise ineffective assistance of counsel.
 {¶ 19} In Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court established the process for evaluating a claim of ineffective assistance of counsel. The court held that an appellant must first show that his counsel's performance was deficient. Id. at 687. An appellant demonstrates this by "showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, the appellant must show that his counsel's deficient performance prejudiced him. Id. This is proven by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 {¶ 20} The Ohio Supreme Court set forth the test as to whether an individual has been denied effective counsel in Statev. Hester (1976), 45 Ohio St.2d 71, 341 N.E.2d 304. In Hester,
the court held that the test was "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." Id. at 79. The Ohio Supreme Court later revised this test in State v. Lytle (1976), 48 Ohio St.2d 391, 396-397,358 N.E.2d 623, vacated on other grounds in (1978), 438 U.S. 910,98 S.Ct. 3135, 57 L.Ed.2d 1154, stating:
When considering an allegation of ineffective assistance ofcounsel, a two-step process is usually employed. First, theremust be a determination as to whether there has been asubstantial violation of any of defense counsel's essentialduties to his client. Next, and analytically separate from thequestion of whether the defendant's Sixth Amendment rights wereviolated, there must be a determination as to whether the defensewas prejudiced by counsel's ineffectiveness.
The court also placed the burden of proof upon the appellant, "since in Ohio a properly licensed attorney is presumably competent." Id., citing Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 209 N.E.2d 164; State v. Williams (1969),19 Ohio App.2d 234, 250 N.E.2d 907.
 {¶ 21} Therefore, in order for an appellant to overcome the presumption of effectiveness, he "must submit sufficient operative facts or evidentiary documents which, if proven, would show that appellant was prejudiced by said ineffective counsel."State v. Smith (1987), 36 Ohio App.3d 162, 163,521 N.E.2d 1112. Until appellant has proven prejudice as a result of ineffective counsel, an evidentiary hearing is not required. SeeState v. Pankey (1981), 68 Ohio St.2d 58, 428 N.E.2d 413.
 {¶ 22} We now review the claims presented by Cunningham alleging ineffective assistance of counsel at the guilt phase of the trial using the standard set forth above. We begin with the first and fourth claims for relief, in which Cunningham alleged that his defense counsel was ineffective for failing to obtain the appointment of a qualified ballistics expert and inadequately preparing the defense case at trial. Cunningham argues that counsel could have and should have shown to the jury a videotape of a procedure in which .380 caliber cartridges were placed into different caliber revolvers and fired. Cunningham argues that this procedure would have clarified for the jury that he could not have fired a .380 caliber cartridge in any of the weapons (.38, .357, or .44 revolver) which the state suggested he possessed on January 3, 2002. Cunningham also argues that defense counsel was ineffective for failing to adequately rebut the testimony of state's witnesses Cynthia Beisser and John Heile with regard to this point.
 {¶ 23} It is not disputed in the record or by the state that on January 3, 2002 Cunningham was not armed with a semi-automatic weapon or a weapon with a clip, but rather was armed with a revolver. Since the weapons Cunningham and Jackson purportedly used on that day were not recovered, witness testimony was the only evidence to indicate which weapon Cunningham possessed. In addition, there is no dispute in the record or by the state that the casings and bullets recovered at the scene by law enforcement officers were of a .380 caliber, which are typically fired by a semi-automatic weapon and not a revolver.
 {¶ 24} John Heile, a forensic scientist with the Bureau of Criminal Investigation and Identification, was a witness for the state. Heile testified that the cartridges recovered at the scene were all fired from the same weapon, a .380 caliber pistol. Heile also testified that most of the bullets recovered at the scene were .380 automatic caliber bullets. Heile could not conclusively state that one of the bullets was fired from the same weapon as the others due to its condition. Also, a lead core from a full metal jacket bullet was recovered which Heile could not conclusively state was fired from the same weapon as the other bullets. However, Heile did testify that the damaged bullet and fragmented lead core had the characteristics of .380 caliber bullets. Since Heile did not have the actual weapons to analyze, he constructed a list of possible guns which could have fired the bullets he analyzed from the scene. All of the weapons on the list were semiautomatic handguns as opposed to revolvers. While Heile testified that .380 caliber cartridges would fit in the chamber of a .38 caliber revolver, he stated that it was unlikely that the revolver would fire. Heile also testified that the .380 caliber cartridges would not fire in a .44 caliber revolver without some type of manipulation to the weapon.
 {¶ 25} Defense counsel thoroughly questioned Heile on cross-examination regarding the differences between weapons of different calibers and the casings and bullets that were recovered from the scene. Heile was consistent in his testimony that the .380 caliber cartridges would fit in a .38 caliber revolver, but that the revolver likely would not fire.
 {¶ 26} Cynthia Beisser, Lucas County coroner, was also a witness for the state. Dr. Beisser performed the autopsies of Leneshia Williams and Jala Grant and testified as to her findings. Dr. Beisser found that both victims died of gunshot wounds to the head. Dr. Beisser testified that she could not determine the caliber of the projectile that was fired based solely on her examination of the wounds. Dr. Beisser testified that the entrance wounds on Leneshia Williams and Jala Grant were consistent with the size of a .380 caliber pistol. Dr. Beisser also testified that the entrance wounds on both victims were consistent with a range of different size caliber weapons. Further, Dr. Beisser testified that .380 and .38 caliber bullets are essentially the same size.
 {¶ 27} Defense counsel also thoroughly examined Dr. Beisser regarding the wounds she examined on the two victims. While Dr. Beisser maintained that the size of the wounds were consistent with the size of .380 caliber bullets, she also stated that the size of .380 and .38 caliber bullets are in essence equal. Although Dr. Beisser was unable to conclusively state the caliber of the bullets that caused the wounds on the victims, she testified that the size of the wounds were not consistent with a large caliber weapon. Further, due to the elasticity of the skin, a bullet may stretch the skin when it passes through it but the skin will snap back in place. Therefore, Dr. Beisser testified that the size of the hole in the skin is not exactly the same size as the projectile that goes through the skin.
 {¶ 28} In the defense's presentation of evidence, Daniel Reiff, a gun shop owner, testified regarding the differences between a .380 caliber pistol and a .44 caliber revolver. Defense counsel apparently wanted to give the impression that Cunningham possessed a .44 caliber revolver on January 3, 2002. Reiff testified that a .44 caliber revolver is much bigger than a .380 caliber pistol. Similarly, Reiff testified that .44 caliber bullets are much bigger than .380 caliber bullets. On cross-examination, Reiff testified that .38, .357, .380 and .9 caliber cartridges are all approximately the same diameter and that they would be indistinguishable to the eye of an average person.
 {¶ 29} Cunningham argues that defense counsel's decision to rebut the prosecution's case with the testimony of Daniel Reiff "did not work." Appellant's Merit Brief, p. 7. However, as noted above, this is not the standard by which a reviewing court determines ineffective assistance of counsel. A reviewing court may not second-guess decisions of counsel which could be considered matters of trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 477 N.E.2d 1128. While the testimony of Daniel Reiff may not have convinced the jury that Cunningham did not fire his gun, defense counsel's cross-examination of the state's witnesses and presentation of the case-in-chief for the defense did not fall below the level of reasonable representation.
 {¶ 30} While the evidence presented at trial showed that a .380 semiautomatic weapon was fired during the shootings on January 3, 2002, the evidence also supported the finding by the jury that Cunningham fired his weapon as well. The testimony of the five witnesses who could recall the events of January 3, 2002 supported the finding that Cunningham fired his weapon at the victims. Since the testimony showed that Cunningham's weapon was a revolver, the casings of the bullets would not have been expelled at the scene, as is the case with a semiautomatic weapon. Therefore, while .380 caliber casings were collected by law enforcement officers at the scene, casings from the weapon fired by Cunningham were not recovered, which would be consistent with him firing a revolver.
 {¶ 31} Further, the evidence shows that only five spent .380 caliber bullets and one .380 caliber bullet fragment were recovered by the police although there were a total of thirteen gunshot wounds among the victims. The difference in the number of bullets recovered and gunshot wounds shows that the physical evidence of the bullets and casings is not conclusive regarding which weapon caused the victims' injuries. Moreover, other pieces of evidence were either not located or were not maintained by the time of trial. Coron Liles, who was shot in the mouth, testified that as he was running to get help after the shooting he spit out a bullet a few blocks from the residence on Eureka Street. This bullet was never recovered by law enforcement officers. A bullet was also discovered on the front steps of the residence on Eureka Street, which was photographed and recovered by law enforcement officers, but was inadvertently misplaced prior to trial. Finally, a bullet still remained in the arm of Tomeaka Grant, a victim of the shootings on January 3, 2002, at the time of trial. The caliber of the bullet in Tomeaka Grant's arm is unkown.
 {¶ 32} Thus, as the trial court held, "while the physical evidence did not directly establish that a revolver was fired during the shootings, the physical evidence and surrounding facts did not in the least rule that out." February 11, 2004 Judgment Entry Denying Post-Conviction Relief, p. 11. The trial court's finding is supported by the record.
 {¶ 33} Cunningham argues that defense counsel could have convinced the jury that a revolver could not have fired .380 caliber cartridges by obtaining a qualified ballistics expert. Cunningham relies on the post-trial interview statements of jurors that it was their understanding that a revolver could fire a .380 caliber cartridge to support his argument. However, based on the evidence outlined above, the jury's finding of Cunningham's guilt was clearly supported. Sufficient evidence existed aside from the analysis of the physical evidence to support Cunningham's involvement in the shootings. Therefore, we cannot say that had defense counsel obtained a ballistics expert it would have established that Cunningham did not fire a weapon at the residence on Eureka Street on January 3, 2002. Even if Cunningham had not fired a weapon in this incident, the jury would still have been able to find him guilty of complicity in all of the crimes and specifications charged.
 {¶ 34} The evidence submitted by Cunningham lacks the threshold standard of cogency. The evidence is only marginally significant and does not advance Cunningham's claim beyond mere hypothesis. Cunningham's counsel was not ineffective so as to have precluded a fair trial or to have created an unreliable result. Since Cunningham has failed to support these grounds with evidence that contains sufficient operative facts to demonstrate he was prejudiced as a result of ineffective counsel, we hold that the trial court did not error in dismissing the first and fourth grounds for relief without an evidentiary hearing.
 {¶ 35} In the ninth, tenth, eleventh and twelfth grounds for relief, Cunningham alleged that defense counsel was ineffective for failing to investigate, prepare and present available mitigating evidence to the jury pertaining to his character, history and background. In the ninth ground, Cunningham alleged counsel did not present records or testimony from employees of the Allen County Children's Services pertaining to Cunningham's involvement with the agency. In the tenth ground, Cunningham alleged counsel failed to present testimony from Sharon Cage, a nurse's aide at Lima Manor Nursing Home, who provided long term care to Bettye Cunningham, Cunningham's mother. In the eleventh ground, Cunningham alleged counsel failed to present evidence of Cunningham's limited involvement in the shootings, consisting of statements Cunningham and Jackson had made to police and the results of the Voice Stress Analyzer tests (VSA) administered to Cunningham and Jackson. Finally, in the twelfth ground, Cunningham alleged counsel failed to seek the assistance of a cultural expert and present such evidence at the mitigation phase. Cunningham argues that these failures by defense counsel prejudiced him.
 {¶ 36} Ohio courts have held that the claim of failure to present mitigating evidence is properly considered in a postconviction proceeding because evidence in support of the claim could not be presented on direct appeal. See State v.Keith, 79 Ohio St.3d 514, 536, 1997-Ohio-367, 684 N.E.2d 47;State v. Scott (1989), 63 Ohio App.3d 304, 308, 578 N.E.2d 841. In Wiggins v. Smith (2003), 539 U.S. 510, 123 S.Ct. 2527,156 L.Ed.2d 471, the United States Supreme Court held that the failure to conduct a reasonable investigation into a defendant's history and background and present mitigating evidence constituted ineffective assistance of counsel. In his ninth, tenth and twelfth grounds for relief, Cunningham argued that counsel's failure to present additional evidence of his positive qualities fell below the standard of reasonable and effective counsel and prejudiced him. However, Cunningham has not shown what these witnesses or records would have provided to the jury that was not provided by the witnesses who testified at the penalty phase. It is uncertain that such testimony or records would have made a difference in the determination of the jury.
 {¶ 37} Our review of the record reveals that Cunningham's counsel adequately investigated his background and character and presented such evidence through the testimony of Cunningham's mother and sister and a forensic psychologist. The forensic psychologist, Dr. Davis, evaluated Cunningham several times, interviewed Cunningham's mother, and reviewed records and other information regarding Cunningham's history and background. Cunningham's mother and sister both testified as to the involvement of Children's Services during Cunningham's childhood, as well as the abuse that both Bettye and the children endured. Dr. Davis also testified regarding Children's Services involvement with the family, specifically relaying the circumstances surrounding the multiple referrals and home visits. Further, Dr. Davis explained his assessments of Cunningham and gave a lengthy description of the factors that likely contributed to Cunningham's problems with depression and substance abuse.
 {¶ 38} The documents presented by Cunningham in support of his ninth, tenth and twelfth grounds do not set out any information that would not have been repetitive and cumulative of that presented at trial. It is within the purview of counsel to determine whether additional expert testimony or other information regarding a defendant's background is cumulative in nature. Yarbrough, 2001 WL 454683, at *7.
 {¶ 39} In the eleventh ground, Cunningham argues that counsel should have presented to the jury Cunningham's and Jackson's statements to law enforcement officers, as well as the results of the VSA tests administered to them. The Ohio Supreme Court has ruled that, while defendants must be given wide latitude in the presentation of mitigating evidence, the Rules of Evidence nevertheless apply at the sentencing phase of a capital trial.State v. Esparza (1988), 39 Ohio St.3d 8, 11-12,529 N.E.2d 192; see also State v. Jenkins (1984), 15 Ohio St.3d 164, 171,473 N.E.2d 264. While the evidence that Cunningham argues should have been admitted was not ruled upon by the trial court at the penalty phase, it is possible that defense counsel did not seek to admit such evidence due to its presumed inadmissibility. The trial court had already ruled on the admissibility of Cunningham's statement at the guilt phase of the trial. In addition, results of lie detector tests are generally inadmissible under Ohio law. Further, defense counsel could have decided not to attempt to admit such evidence due to the incriminating nature of the evidence.
 {¶ 40} Moreover, this court has repeatedly held that debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. Yarbrough, 2001 WL 454683, at *7, citing State v. Clayton (1980), 62 Ohio St.2d 45, 49,402 N.E.2d 1189. We will not second-guess every aspect of defense counsel's presentation of mitigation evidence at the penalty phase. Yarbrough, 2001 WL 454683, at *7. It is well-settled that the existence of alternative or additional mitigation theories not pursued by defense counsel does not establish ineffective assistance of counsel. Id., citing State v. Combs
(1994), 100 Ohio App.3d 90, 105, 652 N.E.2d 205.
 {¶ 41} Nothing in the record before us or in the evidentiary material offered in support of these claims presents a reasonable probability that, but for the alleged omissions of counsel, the result of the penalty phase of Cunningham's trial would have been different. Thus, Cunningham failed to sustain his burden of demonstrating substantive grounds for relief. We, therefore, hold that the trial court did not err in dismissing Cunningham's ninth, tenth, eleventh and twelfth grounds for relief without an evidentiary hearing.
 {¶ 42} In the second and sixth grounds for relief, Cunningham alleged that the prosecution violated the Brady rule by failing to provide defense counsel with the police summaries of interviews with witnesses Dwight Goodloe and James Grant that were conducted shortly after the shootings. Cunningham argues that these statements contained information of the events that transpired on January 3, 2002 that would have allowed defense counsel to attack or impeach the testimony presented by the witnesses at trial.
 {¶ 43} There is an obligation imposed upon the prosecution to disclose to an accused evidence that is material to the accused's guilt or innocence. Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215. Evidence is "material" only if there is a "reasonable probability" that the result of the proceeding would have been different had the evidence been disclosed to the defense. U.S. v. Bagley (1985), 473 U.S. 667, 682,105 S.Ct. 3375, 87 L.Ed.2d 481. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id., quoting Strickland, 466 U.S. at 694.
 {¶ 44} The court in Kyles v. Whitney (1995), 514 U.S. 419,434, 115 S.Ct. 1555, 131 L.Ed.2d 490, outlined four aspects of materiality under the standard set forth in Bagley. Regarding the first aspect, the Kyles court stated that "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." Id. The Kyles court further stated:
The question is not whether the defendant would more likelythan not have received a different verdict with the evidence, butwhether in its absence he received a fair trial, understood as atrial resulting in a verdict worthy of confidence. A `reasonableprobability' of a different result is accordingly shown when thegovernment's evidentiary suppression `undermines confidence inthe outcome of the trial.'
Id., quoting Bagley, 473 U.S. at 678.
 {¶ 45} The second aspect of materiality is that it is not a test of sufficiency of evidence. Kyles, 514 U.S. at 434. In other words, "[o]ne does not show a Brady violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Id. at 435. Regarding the third aspect, the court noted that "once a reviewing court applying Bagley has found constitutional error there is no need for further harmless-error review." Id. The fourth and final aspect of materiality is that its definition in terms of the suppressed evidence is considered collectively, not item by item. Id. at 436.
 {¶ 46} In the Kyles case, the United States Supreme Court found that disclosure of the witnesses' statements "would have resulted in a markedly weaker case for the prosecution and a markedly stronger one for the defense." Id. at 441. In its assessment, the court in Kyles considered whether the value of the witnesses would have been substantially reduced or destroyed by disclosure of the statements. Id.
 {¶ 47} In the case sub judice, we cannot say that disclosure of the statements of Dwight Goodloe or James Grant to defense counsel prior to trial would have made a different result reasonably probable. The prosecution did not willfully withhold evidence that they knew would be favorable to the defense. Rather, the prosecution made all prior statements of the witnesses available to the court for in camera inspection pursuant to Crim.R. 16(B)(1)(g). Both Goodloe and Grant were key witnesses for the prosecution and their prior statements were made available by the prosecution for review by the trial court subsequent to their direct examination testimony. The court reviewed these statements, along with statements of four other witnesses, during the trial and determined that there were inconsistencies in the testimony of some of the witnesses and not with others. The court determined that there were no inconsistencies in the testimony of Goodloe and defense counsel was not permitted to review the prior statements of Goodloe. The court did find inconsistencies with the testimony of Grant and defense counsel was permitted to review his prior statements. All statements were made part of the trial record.
 {¶ 48} We agree with the trial court that Cunningham's second and sixth grounds are barred from consideration at this time based on the doctrine of res judicata. Our review of Cunningham's petition for postconviction relief occurs while his direct appeal is currently pending before the Ohio Supreme Court and it is quite possible that these grounds were raised on direct appeal. These issues could have fairly been determined without resort to evidence outside of the trial record. As the claims were evident and part of the record at the time of direct appeal, they are now barred. We therefore find no error in the trial court's decision dismissing these claims without an evidentiary hearing.
 {¶ 49} Cunningham's third and fifth grounds for relief are related to the second and sixth grounds discussed above. In his fifth ground, Cunningham asserted that the trial court erred by not allowing defense counsel to review the statements made by Goodloe to investigating officers. Cunningham asserts that Crim.R. 16(B)(1)(g) required that defense counsel be permitted to review the statements for inconsistencies.
 {¶ 50} Crim.R. 16(B)(1)(g) provides:
Upon completion of a witness' direct examination at trial, thecourt on motion of the defendant shall conduct an in camerainspection of the witness' written or recorded statement with thedefense attorney and prosecuting attorney present andparticipating, to determine the existence of inconsistencies, ifany, between the testimony of such witness and the priorstatement.
 If the court determines that inconsistencies exist, thestatement shall be given to the defense attorney for use incross-examination of the witness as to the inconsistencies.
 If the court determines that inconsistencies do not exist thestatement shall not be given to the defense attorney and he shallnot be permitted to cross-examine or comment thereon.
 Whenever the defense attorney is not given the entirestatement, it shall be preserved in the records of the court tobe made available to the appellate court in the event of anappeal.
 {¶ 51} Ohio courts have held that only the written statements of the witnesses, rather than police notes or reports, are discoverable under Crim.R. 16. State v. Washington (1978),56 Ohio App.2d 129, 132-133, 381 N.E.2d 1142; State v. Johnson
(1978), 62 Ohio App.2d 31, paragraph one of the syllabus,403 N.E.2d 1003. The Washington court stated that it was clear that notes made by a detective when talking to a witness as part of an investigation were not included within the purview of Crim.R. 16(B)(1)(g) "because it would be incorrect to permit a perusal of notes made by a detective which do not have the imprimatur of the witness." Washington, 56 Ohio App.2d at 133. The court further stated that "[t]he notes may or may not be accurate and a witness should not be bound by or cross-examined concerning them unless they have received his approval." Id.
 {¶ 52} The statements Goodloe made to the investigating officer prior to trial were incorporated into a summary of the officer's notes. This summary that Cunningham argues should have been given to him prior to trial, or at least reviewed by defense counsel subsequent to Goodloe's direct examination testimony, does not constitute a statement by a witness as contemplated by Crim.R. 16(B)(1)(g). There is nothing to indicate that Goodloe reviewed the notes and the officer's summary was not signed by Goodloe. Therefore, Cunningham was not entitled to the officer's summary as part of discovery.
 {¶ 53} In State v. Daniels (1982), 1 Ohio St.3d 69, 70-71,437 N.E.2d 1186, the Ohio Supreme Court held:
We construe Crim.R. 16(B)(1)(g) to mean that, once the trialcourt independently determines that a producible out-of-courtwitness statement exists, attorneys for all parties must be giventhe opportunity to inspect the statement personally. The trialcourt's simply permitting the attorneys to be passively presentand available for consultation during the in camerainspection constitutes reversible error.
Therefore, defense counsel is entitled to participate in the in camera inspection of a statement only after the trial court independently determines that a producible out-of-court statement of the witness exists. Id. In the case sub judice, defense counsel was properly denied inspection of the police summary because it did not contain a "statement" of the witness within the meaning of Crim.R. 16(B)(1)(g).
 {¶ 54} Defense counsel thoroughly cross-examined Goodloe and brought out any conceivable discrepancies. A review of the statements made by Goodloe incorporated into the officer's summary and Goodloe's trial testimony did not reveal any inconsistencies on which defense counsel would have been able to further cross-examine Goodloe. We are unable to find any prejudice resulting from the trial court refusing to allow defense counsel to review the statement at trial.
 {¶ 55} Furthermore, it appears that this claim could have been raised on direct appeal, as it could have fairly been determined without resorting to evidence outside of the trial record. As this claim was evident and part of the record at the time of the direct appeal it is barred from consideration at this time based on the doctrine of res judicata. Therefore, we find no error in the trial court's decision dismissing the fifth ground for relief without an evidentiary hearing.
 {¶ 56} In his third ground, Cunningham alleged that his counsel was rendered ineffective due to the state's failure to provide exculpatory evidence to defense counsel regarding the statements of James Grant. Cunningham basically reiterates the same argument that was presented in the sixth ground for relief.
 {¶ 57} As we discussed above, notes made by a detective when talking to a witness as part of an investigation are not included within the purview of Crim.R. 16(B)(1)(g). Washington,56 Ohio App.2d at 133. The statements Grant made to investigating officers were not written by him, reviewed by him, or signed by him. Rather, the officers' notes of the interviews with Grant were incorporated into reports. Even if the statements were within the purview of Crim.R. 16(B)(1)(g), the prosecution did not have a duty to disclose the statements until after the direct examination of the witness and an in camera review of the statements by the trial court.
 {¶ 58} In this case, the trial court reviewed the statements of James Grant and permitted defense counsel to review the statements. Defense counsel then thoroughly cross-examined Grant with regard to his recollection of the events. Thus, defense counsel was fully apprised of Grant's prior statements and any possible inconsistencies between those statements and his testimony on direct examination. Therefore, defense counsel was not prejudiced by the prosecution's failure to disclose the statements of James Grant prior to his trial testimony. Defense counsel also was not ineffective in their thorough cross-examination of Grant.
 {¶ 59} Furthermore, it appears that this claim could have been raised on direct appeal, as it could have fairly been determined without resorting to evidence outside of the trial record. As this claim was evident and part of the record at the time of the direct appeal it is barred from consideration at this time based on the doctrine of res judicata. Therefore, we find no error in the trial court's decision dismissing the third ground for relief without an evidentiary hearing.
 {¶ 60} In the seventh ground for relief, Cunningham asserted that the presence of Juror Number 21, Nichole Mikesell, on the jury was prejudicial to him and violated his rights to a fair and impartial jury. Cunningham provided a summary of an interview with Mikesell conducted by a privately hired investigator after Cunningham's trial had ended. Cunningham points to several statements made by Mikesell to the investigator in support of his assertion of prejudice. Specifically, the investigator provided that Mikesell said Cunningham "is an evil person." Further, Mikesell stated "some social workers worked with Jeronique in the past and were afraid of him." Cunningham also points to Mikesell's comments that "if you observe one of the veins starting to bulge in his head, watch out and stay away because he might try to kill you" and that Cunningham "had no redeeming qualities" to show Mikesell was not an impartial juror.
 {¶ 61} The only comment made by Mikesell that would have any bearing on Cunningham's assertion is that she was provided information by some social workers regarding Cunningham. However, the investigator's interview summary of Mikesell does not indicate whether Mikesell obtained this information from the social workers prior to, during, or subsequent to Cunningham's trial. The record also does not provide when the investigator conducted these interviews with the jurors. However, the record does provide that Mikesell was thoroughly examined during the voir dire process and that she informed the court regarding the information she had about the case. Mikesell never indicated that she could not be a fair and impartial juror.
 {¶ 62} The other comments Mikesell made to the investigator that Cunningham relies upon to show Mikesell's prejudice are statements regarding Mikesell's impression of Cunningham's character, which was likely shaped during the trial. Further, the other information provided in the investigator's interview summary of Mikesell shows that Mikesell followed the law and carefully considered the evidence in the case and the mitigating factors that were presented by defense counsel. Therefore, the trial court did not err in dismissing, without an evidentiary hearing, Cunningham's claim that juror Mikesell had prejudicial information regarding Cunningham and that she had already formed an opinion about the outcome of the case from the beginning.
 {¶ 63} Cunningham's eighth ground for relief is related to the seventh ground. In the eighth ground, Cunningham asserted that defense counsel was ineffective during voir dire. Cunningham argues that defense counsel failed to conduct a reasonable inquiry during voir dire to elicit prejudicial information from juror Nichole Mikesell.
 {¶ 64} It is a well established principle of law that "[t]he conduct of voir dire by defense counsel does not have to take a particular form, nor do specific questions have to be asked."State v. Cornwell, 86 Ohio St.3d 560, 568, 1999-Ohio-125,715 N.E.2d 1144, citing State v. Evans (1992), 63 Ohio St.3d 231,247, 586 N.E.2d 1042. A review of defense counsel's examination of juror Mikesell and her testimony in response to defense counsel's questions indicates no deficient performance or errors on the part of counsel. While Cunningham can now point to post-trial statements of Mikesell that show she has formed a negative impression of Cunningham, there was no indication given by Nichole at the time of the jury voir dire to indicate she had such an impression. Cunningham may now contend that defense counsel should have asked more probing questions of juror Mikesell, but Ohio courts "have recognized that counsel is in the best position to determine whether any potential juror should be questioned and to what extent." State v. Murphy,91 Ohio St.3d 516, 539, 2001-Ohio-112, 747 N.E.2d 765, citing State v.Bradley (1989), 42 Ohio St.3d 136, 143-144, 538 N.E.2d 373.
 {¶ 65} Cunningham has not supported this ground with evidence dehors the record that contains sufficient operative facts to demonstrate he was prejudiced as a result of ineffective assistance of counsel. We, therefore, hold that the trial court did not err in dismissing Cunningham's eighth ground for relief without an evidentiary hearing.
 {¶ 66} In the fourteenth ground for relief, Cunningham asserted that the cumulative errors demonstrated in his petition for postconviction relief deprived him of fundamental fairness and resulted in his conviction and sentences being void. The Ohio Supreme Court recognized the doctrine of cumulative error inState v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus, 509 N.E.2d 1256. In State v. Garner,74 Ohio St.3d 49, 64, 1995-Ohio-168, 656 N.E.2d 623, the Court stated that "[p]ursuant to this doctrine, a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal."
 {¶ 67} In the case sub judice, the doctrine of cumulative error is not applicable as we have found no merit to Cunningham's other twelve grounds for relief. We, therefore, hold that the trial court did not err in dismissing Cunningham's fourteenth ground for relief without an evidentiary hearing.
 {¶ 68} Accordingly, since Cunningham has failed to produce sufficient, credible evidence demonstrating that he has suffered an infringement or deprivation of his constitutional rights, we hold that the trial court properly found that Cunningham did not set forth sufficient operative facts to warrant an evidentiary hearing and properly dismissed the petition for postconviction relief. Therefore, we overrule Cunningham's first assignment of error.
 {¶ 69} In his second assignment of error, Cunningham argues that the trial court erred in not granting his request to conduct discovery to support his grounds for relief. Ohio law is clear that discovery is not available in the initial stages of a postconviction proceeding. State v. Byrd (2001),145 Ohio App.3d 318, 332, 762 N.E.2d 1043. While a petition for postconviction relief is a civil proceeding, the procedure is governed by R.C. 2953.21. The statute does not confer upon the trial court the power to conduct and compel discovery under the Civil Rules. State v. Dean, 149 Ohio App.3d 93, 2002-Ohio-4203,776 N.E.2d 116, ¶ 10. Since discovery is not available in the initial stages of a postconviction proceeding, the trial court did not err in refusing to allow Cunningham to engage in discovery. Accordingly, the second assignment of error is overruled.
 {¶ 70} In his third assignment of error, Cunningham argues that the trial court erred in denying his request for funds to retain a firearms and ballistics expert. Cunningham sought the funds to retain the expert to support his first and fourth grounds for relief. Since we have already determined that Cunningham's first and fourth grounds for relief are without merit and that R.C. 2953.21 does not confer power upon the trial court to conduct or compel discovery, we hold that the trial court did not err in denying Cunningham's request for funds to retain a firearms and ballistics expert. Accordingly, the third assignment of error is overruled.
 {¶ 71} Finding no merit with Cunningham's assignments of error, the judgment of the Common Pleas Court of Allen County is affirmed.
Judgment Affirmed.
 Cupp and Rogers, J.J., concur.